UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

PAUL GRISHAM,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        4:16-cv-00234-RLY-DML
                                       )
TOWN OF CLARKSVILLE,                   )
                                       )
            Defendant.                 )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Paul Grisham, is a former employee of the Town of Clarksville.

Following his termination, he brought the present action against the Town alleging it

failed to accommodate his disability, terminated him on the basis of his disability, and

retaliated against him for asking for an accommodation, in violation of the American with

Disabilities Act.  The Town now moves for summary judgment.  Having reviewed the

parties' submissions, the designated evidence, and the applicable law, the court finds the

Town' motion should be **GRANTED in part** and **DENIED in part**.

I.     **Background**

       A.     **Plaintiff's Physical Impairments**

Plaintiff suffered a back injury in high school and has had two back surgeries,

including a lumbar fusion in 2008.  (Filing Nos. 31-8 and 50-5, Deposition of Paul

Grisham ("Plaintiff Dep.") at 24-25).  The fusion has caused stenosis, neuropathy, and

arthritis.  (Filing No. 50-2, Declaration of Paul Grisham ("Grisham Decl.") ¶ 1).  Above

the site of the fusion, Plaintiff has a deteriorating disc and slipped vertebrae.  (*Id.*).  Those

1

conditions have caused him chronic pain. (*Id.*). Consequently, in an effort to relieve the pain, he receives "trigger-point" injections on a regular basis. (*Id.* at 32, 80).

**B.      Plaintiff's Position from 2010-2015**

Plaintiff was hired by the Town in 2008 as a General Laborer in the Town's Storm Water Department. (*Id.* at 21, 36-37). The job requirements of the General Laborer position included, but were not limited to, performing maintenance duties that require walking, climbing, crouching, bending, and stooping throughout the Town as needed and having the physical capability to lift, push or pull objects weighing up to one hundred pounds. (Filing No. 38-2, Job Description at 1, 3). There was no light duty. (Filing No. 38-3, Deposition of Kent Marlin at 22, 25).

From 2010-2015, Plaintiff was under no medical restrictions. (*Id.* at 40). His job varied from day to day but often included driving a truck, as well as maintaining, repairing, and constructing catch basins and the infrastructure for storm water in Clarksville. (*Id.* at 38-40). Plaintiff testified his supervisor, Kent Marlin, and the Commissioner of the Storm Water Department, Tom Clevidence, informed him that if he could not perform a certain task, to ask for help from his co-workers. (*Id.* at 75-76, 80). Accordingly, from 2010 to 2015, Plaintiff received assistance from his co-workers if the job included lifting, digging, and running a jack hammer. (*Id.* at 40, 43, 76).

Plaintiff also held a Commercial Driver's License ("CDL"), which was on file with the Town. (*Id.* at 42). Each time he renewed it, he underwent a fitness for duty exam. (*Id.*). In every instance, the examiner noted Plaintiff's history of having a lumbar fusion surgery but expressly stated Plaintiff had no limitations, as he had been cleared by

his surgeon. (*Id.* at 42-44; Filing No. 38-4, Commercial Driver's License ("CDL") Medical Exam).

### C. Plaintiff's Position Post-Merger

In December 2015, the Town's Storm Water Department and the Town's Street Department merged into the Public Works Department. (Filing No. 50-3, Deposition of Brad Cummings ("Cummings Dep.") at 11-12). Brad Cummings, formerly the Commissioner of the Street Department, became the Director of the Public Works Department. (*Id.* at 12).

At a meeting held on December 4, 2015, Plaintiff learned that he had been assigned to the chipper truck—a truck with a wood chipper in tow that was used to pick up and clear debris on Town streets. (*Id.* at 51; Plaintiff Dep. at 45). The duties on the chipper truck were formerly assigned to laborers from the Street Department. (Cummings Dep. at 50). Cummings testified Plaintiff was assigned the job "so we could commingle more people together" to "start the team-building process." (Cummings Dep. at 51-52).

Plaintiff's new assignment involved repeatedly getting into and out of the pickup truck and lifting and/or pulling tree limbs and other debris to the chipper. (Plaintiff Dep. at 58). During the December 4 meeting, Plaintiff was given a Job Description for the Public Works Department General Laborer Position. (Filing No. 38-2, Job Description). On the last page of that document, Plaintiff checked "no" to the question, "Is there anything that would keep you from meeting the job duties and requirements as outlined?" (*Id.* at 6). The Job Description also stated that an employee was required "to notify the

3

Public Works Director, Assistant Public Works Director or a Supervisor in writing" if he

or she was under "any restrictions." (*Id.* at 2). After Plaintiff notified Cummings he did

not drive commercial vehicles for the Storm Water Department because of his

medications, Cummings informed him to provide the Town with a list of his restrictions

for review. (Filing No. 38-3, Cummings' Jan. 4 Memo).

On the day he started his new assignment on the chipper truck—December 7,

2015—Plaintiff told Marlin and Clevidence that he did not think he could physically do

the job. (Plaintiff Dep. at 57; *see also* Filing No. 38-8). He did not tell Cummings of his

concern or ask for an accommodation at that time. (Plaintiff Dep. at 53-54). He

performed the job for twelve work days. (*Id.* at 53). The repetitive walking, lifting,

bending, pulling, and tugging aggravated his back. (Grisham Decl. ¶ 14). He was in

severe pain every night after work, and the pain became unbearable. (*Id.*).

### D.     Plaintiff's Requests for Accommodation

On January 4, 2016, Plaintiff approached Cummings and informed him he would

not work on the chipper truck because he had a disability for which he takes medication

on a daily basis. (Plaintiff Dep. at 62-63; Filing No. 40, Taped Conversation[1]). He

requested an accommodation. (Plaintiff Dep. at 62-63; Filing No. 40). Cummings

informed Plaintiff he was not aware of any disability he had. (Filing No. 40; Filing No.

38-8). Cummings also reminded Plaintiff that at the December 4 employee meeting, he

---

[1] Plaintiff retained counsel at the end of December 2015 and tape recorded his conversations
with Cummings on January 4, 5, and 6, 2016. (Filing No. 40, CD). Plaintiff produced only the
January 4 and 5 conversations, not the January 6 conversation.

informed all Storm Water employees to provide in writing any restrictions and/or drugs they are taking that prevents or restricts them from doing their job.  Plaintiff did not do so.  (Filing No. 40; Filing No. 37-8).  Cummings also asked what accommodation Plaintiff sought but was not given an answer.  (Filing No. 40).  After Plaintiff refused to work the chipper truck again, Cummings sent him home.  (Filing No. 40; Filing No. 37-8).

On January 5, 2016, Plaintiff again told Cummings he could not perform the job on the chipper truck and asked for an accommodation.  (Plaintiff Dep. at 62-63; Filing No. 40; Cummings Dep. at 86-91; Filing No. 40).  Cummings told Plaintiff to read the employee handbook and put his request for an accommodation in writing.  (Filing No. 40; Cummings Dep. at 87).  Plaintiff became upset and asked him if he "lived under a rock" because "everyone knew he had a disability."  (Filing No. 40).  Plaintiff said he could "do a lot of things," but he could not work on the chipper truck.  (*Id.*).  According to Plaintiff, Cummings told him to do his job or go home.  (Plaintiff Dep. at 63).  According to Cummings, he told Plaintiff that was the last day he would send Plaintiff home for refusing to do his job and that Plaintiff either needed to perform his job duties or provide information related to his alleged disability in writing.  (Cumming Dep. at 88; Filing No. 37-8).

On January 6, 2016, Plaintiff submitted a written request asking to be returned to his former assignment or a like position.  (Filing No. 38-10, Written Request).  He also submitted two medical records.  (Filing No. 38-11, Medical Records).  One of the records was from an October 28, 2015 office visit with the Norton Leatherman Spine Center.  (*Id*.

at 3-4).  Those records discussed Plaintiff's back issues and medications for pain.  (Filing

No. 38-11 at 3-4).  The other record was a doctor's note from Clark Physician Group,

Thoracic and Vascular Surgery Center, dated October 19, 2015, which noted Plaintiff

was permitted to return to work from stint placement surgery with the following

restrictions: "No prolonged walking or standing."  (*Id.* at 1).

Cummings asserts Plaintiff raised his voice in an angry tone during the meeting

and at one point, jumped up from his seat.  (Filing No. 38-13, Cummings' Jan. 6 Memo).

Plaintiff testified he frequently stood up during the meeting because his back was hurting,

and standing alleviated some of the pain.  (Plaintiff Decl. ¶ 20).

At the end of the meeting, Cummings told Plaintiff he could give him a light-

weight chain saw.  (Cummings Dep. at 93; Plaintiff Dep. at 64).  He also told him he

would review Plaintiff's documentation with Anita Neeld of Human Resources.

(Cummings Dep. at 91-93).  Plaintiff then left Cummings' office to go to his assigned job

on the chipper truck.  (Plaintiff Dep. at 66-67).  Cummings contacted Neeld and made an

appointment with her for 9:30 a.m.  (Cummings Dep. at 93-94).

### E.    Plaintiff's Termination

In the interim, Plaintiff's co-worker, Jonathan Booth, reported to Marlin that

Plaintiff refused to get off the chipper truck and assist him.  (Cummings Dep. at 94-95).

When Cummings found out, he told Marlin to observe Plaintiff.  (*Id.* at 96).  Marlin

informed Cummings Plaintiff did not get out of the truck on three stops; after the third,

Marlin spoke to Plaintiff and gave him a warning.  (*Id.*; Filing No. 38-13, Cummings'

Jan. 6 Memo).  According to the Town, Plaintiff continued to sit on the truck.  (Filing No.

38-13). Plaintiff denies that fact. (Plaintiff Dep. at 67 ("Q: Were you doing your job on the chipper truck that day? A: Yes. Q: Had you been getting in and out of the truck and -- A: Yes. -- picking up debris? A: Yes)). Cummings then met with Neeld and terminated him. (Cummings Dep. at 98). The stated reason for his termination was insubordination. (Filing No. 38-14, Termination Document).

### F.      Plaintiff Files for Social Security Disability

Two of Plaintiff's healthcare providers, Dr. Louie Williams and Dr. Rolando Puno, recommended that he not return to work at his most recent visits with them in July and October 2016, respectively. (Plaintiff Dep. at 28-29). They did not give him any restrictions; they simply recommended that he not work and apply for social security disability. (*Id.*).

On November 8, 2016, Plaintiff applied for social security disability, stating the start date of his disability was January 6, 2016. (Filing No. 38-15, Application for Social Security Disability Benefits at 12). In the application, Plaintiff stated that his "body is worn out and [he] can no longer do the work," and that he was "fired because [he] could no longer due [sic] the work required with all [his] health problems." (*Id.* at 15, 21).

## II.    Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant

bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *Anderson,* 477 U.S. at 255.

## III. Discussion

### A. ADA Discrimination

The ADA prohibits employers from discriminating against a "qualified individual" because of his disability. 42 U.S.C. § 12112(a). A plaintiff can prove disability

discrimination under the ADA in three[2] ways, two of which are applicable here. They

are: (1) by claiming the defendant intentionally acted on the basis of his disability, and

(2) by claiming the defendant failed to provide him a reasonable accommodation. *A.H.*

*by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592-93 (7th Cir. 2018).

### 1. Reasonable Accommodation

To establish a *prima facie* case for failure to accommodate, a plaintiff must show

that: (1) he is a qualified individual with a disability; (2) his employer was aware of his

disability; and (3) the employer failed to reasonably accommodate his disability.

*Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011). To survive a motion

for summary judgment, a plaintiff must present the court with evidence that, if believed

by a trier of fact, would establish all three elements. *Id.*

A qualified individual with a disability is defined as an individual with a disability

"who, with or without reasonable accommodation, can perform the essential functions of

the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

"An employee begins the accommodation process by notifying h[is] employer of h[is]

disability;" at that point, "the employer is obligated to engage in an interactive process to

determine the appropriate accommodation under the circumstances." *Spurling v. C & M*

*Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014). However, if the accommodation

"would impose an undue hardship" on the operation of the employer's business, an

accommodation need not be made. 42 U.S.C. § 12112(b)(5)(A). "Whether or not an

---

[2] The third way is by showing the "defendant's rule disproportionately impacts disabled people." *A.H.*, 881 F.3d at 592-93.

individual meets the definition of a qualified individual with a disability is to be

determined as of the time the employment decision was made." *Bay v. Cassens Trans.*

*Co.*, 212 F.3d 969, 974 (7th Cir. 2000).

### a. Disability

The Town first argues Plaintiff is not disabled within the meaning of the ADA.

An individual has a disability if he has "a physical or mental impairment that

substantially limits one or more major life activities of such individual." 42 U.S.C. §

12102(1). A "physical impairment" includes "[a]ny physiological disorder or condition .

. . affecting one or more body systems, such as . . . [the] musculoskeletal system[.]" 29

CFR § 1630.2(h). "Major life activities" include, but are not limited to: performing

manual tasks, walking, standing, lifting, and bending, as well as the operation of a major

bodily function, including musculoskeletal functions. 29 C.F.R. §§ 1630.2(i)(1)(ii), (iii).

Whether a plaintiff's condition "substantially limits" a major life activity is

construed broadly in favor of coverage; it is not an exacting standard. *See* 29 C.F.R. §

1630.2(j)(1)(i) ("[T]he term 'substantially limits' shall be construed broadly in favor of

expansive coverage, to the maximum extent permitted by the terms of the ADA.

'Substantially limits' is not meant to be a demanding standard."). "An impairment need

not prevent, or significantly or severely restrict, the individual from performing a major

life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii).

Instead, an impairment is a disability if it "substantially limits the ability of an individual

to perform a major life activity as compared to most people in the general population."

*Id.*

Plaintiff submits he suffers from chronic back pain which affects his activities of daily living. Walking, lifting, and bending exacerbate his back pain, "particularly if [he] [is] engaged in repetitive motion." (Plaintiff Decl. ¶ 3). Consequently, he avoids cutting the grass, raking leaves, and vacuuming; avoids shopping with his wife; avoids "any athletic or physical activities"; avoids lifting "anything, to the extent possible," including his small dogs; and avoids "prolonged standing, such as cooking or washing dishes." (*Id.* ¶¶ 4-7).

In addition, Plaintiff has undergone two back surgeries to treat his conditions, and his doctor has recommended a third operation. (Plaintiff Dep. at 34). Moreover, he regularly obtains "trigger-point" injections to attempt to address the pain. (*Id.* at 32, 80).

The court finds Plaintiff's back condition and the limitations it poses on his activities of daily living form a basis for a reasonable jury to find he has a disability within the meaning of the ADA.

### b. Qualified Individual with a Disability

Next, the Town argues Plaintiff was not a qualified individual with a disability at the time of his termination for three reasons. First, it argues that having a CDL was an essential job function of a General Laborer, and Plaintiff, by his own testimony, admitted he would not have been able to pass a CDL exam in January 2016.

A CDL is listed as a job requirement in the General Laborer Job Description under the section entitled "Knowledge." (Filing No. 38-2 at 4). Plaintiff testified he has never been denied a CDL since he last renewed it in 2015. (Plaintiff Dep. at 20, 44). When asked at his deposition whether he thought he would pass the CDL physical exam today,

he answered "no" because his eyesight and his blood pressure had gotten worse. (Plaintiff Dep. at 77). When asked if he thought he could have passed the exam in January 2016, he replied, "I don't know." (*Id.*). Based on this testimony, the court cannot rule, as a matter of law, that Plaintiff would *not* have passed the CDL exam in January 2016.

Even if Plaintiff could not renew his CDL in 2016, he disputes that maintaining a CDL was an essential function of the General Laborer job. "The content of a job description is merely one of several factors courts consider when determining whether a function is essential." *Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016) (citing 29 C.F.R. § 1630.2(n)(3)). One relevant factor is the "work experience of past incumbents on the job." 29 C.F.R. § 1630.2(n)(3)(vi). Here, Plaintiff testified that many General Laborer assignments do not require a CDL. (Plaintiff Decl. ¶ 28). A CDL is only required for driving trucks with air brakes, such as the large dump trucks, the garbage truck, and the Vactor truck. (*Id.*). Other jobs with smaller trucks, such as the chipper truck and "the truck with the crane" did not require a CDL to operate them. (*Id.*). The court therefore finds a genuine issue of fact exists on whether maintaining a CDL was an essential function of the General Laborer job. *See Brown*, 827 F.3d at 613 (finding "the essential-function inquiry is a factual question").

Second, the Town argues the chipper truck was no more laborious, and involved the same movements, than any other General Laborer job. Plaintiff disputes the Town's assertion, arguing that repetitive bending, pulling, twisting, and tugging involved with the chipper truck assignment was more intense than in other jobs, and caused him extreme

12

pain. (Plaintiff Decl. ¶¶ 14 (referring to the time he worked the chipper truck as a "living hell")). That is why he requested he be placed in his prior position "or any other assignment with [a] similar level of physical activity," like clearing ditches and responding to storms. (*Id.* ¶¶ 15, 17). The court therefore finds that whether all jobs involve the same physical activity is a fact issue and must be determined by the trier of fact.

Lastly, the Town argues that Plaintiff's representations in his application for social security disability benefits demonstrates that he was not qualified to perform his job with or without an accommodation.

A claim for social security disability benefits and a claim for disability discrimination do not necessarily conflict; "an SSDI claim and an ADA claim can comfortably exist side by side." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802-03 (1999). That is because "when the Social Security Administration determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account." *Id.* at 803 (emphasis in original).

Here, Plaintiff's application for disability benefits appears to conflict with his ADA claims. In his application, he represented that he could not perform his job due to his health condition. Therefore, he must offer a sufficient explanation of the apparent inconsistency with the necessary elements of an ADA claim. *Id.* at 806. "To defeat summary judgment, the explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier

statement, the plaintiff could nonetheless 'perform the essential functions' of h[is]job, with or without accommodation." *Id.*

In his declaration, Plaintiff explains he is able to perform manual labor work as a General Laborer as long as he is accommodated for his physical limitations. (Plaintiff Decl. ¶ 29). And due to those limitations, and his need for an additional surgery, he fears he will not find work to provide for his family. (*Id.*). Therefore, he applied for social security disability benefits. (*Id.*). The court finds his explanation is sufficient for purposes of this motion. The ultimate issue is, again, whether he could perform the General Laborer job with accommodations at the time of his termination.

### c.     Knowledge

At the time Plaintiff was assigned to the chipper truck, the documents on file with the Town indicated Plaintiff had no restrictions. (*See* Plaintiff Dep. at 48 (testifying he indicated on the signed Job Description that he did not have "anything" that would keep him from doing his job duties); *see also id.* at 57 ("Q: But you had provided them documentation that indicated you had no restrictions; is that correct? A: I had no restrictions to perform the job that I had held previously.")). And although there is evidence that Marlin and Clevidence knew about Plaintiff's limitations, Cummings—the decision-maker in this case—was only aware of Plaintiff's 2008 back fusion surgery from his review of his employee file prior to the merger. (Cummings Dep. at 82 ("I tried to figure out what his requests possibly could be, being that there was no physical restrictions that I could see and I wasn't aware of any limitations or restriction that he had had.")). And during Plaintiff's meetings with Cummings on January 4 and 5, 2016, he

14

never identified what his claimed disability was or what type of accommodation he needed. (*See* Cummings Dep. at 88 ("Q: Am I correct that you felt you could not provide an accommodation until he provided additional information? A: Yes, I did not – I was not aware of what issue to accommodate for.")).

By January 6, however, Plaintiff submitted a letter with two medical records evidencing his chronic back issues. Cummings' notes from that meeting reflect that Plaintiff told him it was hard for him to twist, pull, lift, bend, and push items. That information, coupled with his prior knowledge of Plaintiff's back surgery, raise a genuine issue of material fact as to whether Cummings knew of Plaintiff's disability prior to his termination.

### d. Reasonable Accommodation/Interactive Process

Under the ADA, a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities," 42 U.S.C. § 12111(9)(B). Plaintiff testified he could do any job except for the garbage truck and the chipper truck. (Plaintiff Decl. ¶16). Cummings agreed he could have been assigned to the pool of laborers, working on clearing ditches, responding to rain events, and other jobs as needed. (Cummings Dep. at 123-24; 128; Plaintiff Decl. ¶ 17). Or, he could have been assigned to the Vactor truck, if the laborer who had just been assigned to it weeks before was moved back to the chipper truck. (Cummings Dep. at 118; Plaintiff Decl. ¶ 25). Accordingly, the record suggests that a reasonable accommodation could have been made as of January 6, 2016.

The record also reflects that Cummings did not consider Plaintiff's request for an accommodation because he and Neeld determined Plaintiff engaged in conduct worthy of termination—he refused to work. Plaintiff disputes that fact. Accordingly, a reasonable jury could find the Town failed to engage in an interactive process with Plaintiff to determine whether a suitable accommodation could have been made.

### e.    Undue Hardship

Once an employee has shown that an accommodation appears reasonable on its face, the employer has the burden of establishing that the accommodation would create an undue hardship in the context of the employer's operations. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).

The Town argues placing Plaintiff in another position would create an undue hardship because it would require other employees to do his work. But the Town fails to offer a specific explanation for why it could not have placed Plaintiff in the pool of laborers who were performing, for example, ditch clearing. As a result, the Town has not shown that transferring Plaintiff to another position would have unreasonably burdened its operations, at least on the evidence before the court.

### f.    Conclusion

For the reasons explained above, the Town's Motion for Summary Judgment on Plaintiff's claim for failure to accommodate is **DENIED**.

### 2.    Disability Discrimination

To establish a prima facie case of disparate treatment under the ADA, a plaintiff must show that: (1) he is "disabled" as defined by the ADA; (2) his work performance

met the defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably. *Dickerson v. Bd. of Tr. of Comm. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The issue in dispute is whether he was treated differently than similarly situated non-disabled employees.

To satisfy the "similarly situated" prong of the prima facie case, an employee must be "directly comparable in all material respects." *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009). This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no "differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir. 2000).

Plaintiff's proposed comparators are two employees who were misusing the Town's clock-in calculator. Specifically, the first employee clocked in the second employee who had not yet reported to work in late 2017. (Cummings Dep. at 71). Cummings terminated the second employee because he had been issued written warnings for prior work-related issues—either taking extended lunch hours or for failing to report that he hit a mailbox. (*Id.*). Cummings suspended the first employee. (*Id.*).

Plaintiff argues he was treated differently than his would-be comparators because he was terminated on his first alleged instance of misconduct. The court does not agree. The comparators were disciplined for attempting to conceal the second employee's tardy attendance. Plaintiff did not engage in similar conduct. Instead, he was disciplined for

17

allegedly refusing to do his job.  Because Plaintiff has failed to identify a similarly

situated non-disabled employee, he has failed to establish his prima facie case.

Accordingly, the Town's Motion for Summary Judgment on Plaintiff's disparate impact

claim is **GRANTED**.

### B.     Retaliation

To establish a prima facie case of retaliation under the ADA, a plaintiff must

establish that: (1) he engaged in statutorily protected activity; (2) his employer took an

adverse employment action; and (3) a causal connection exists between the protected

activity and the adverse action.  *Dickerson*, 657 F.3d at 601.  Only the third element is in

dispute.

The Town's stated reason for terminating Plaintiff was his refusal to do his job.

Plaintiff argues "his refusal to perform his job and his requests for reasonable

accommodation were one in the same."  (Filing No. 50, Response at 28).  In other words,

Plaintiff refused to work on the chipper truck because he physically could not do the job,

*not* because he simply preferred another job.

The court finds a reasonable juror could find Plaintiff was terminated because he

asked for an accommodation.  Plaintiff submitted the requested paperwork on January 6,

2016, and, he contends, he went to work on the chipper truck as directed.  In the interim,

Cummings met with Neeld and decided to terminate him without ever considering

whether an accommodation could be made.  The evidence in this regard is admittedly

thin, but enough to get to a jury.  Accordingly, the Town's Motion for Summary

Judgment on Plaintiff's retaliation claim is **DENIED**.

## IV.    Conclusion

For the reasons set forth above, the court **GRANTS in part** and **DENIES in part**

Defendant's Motion for Summary Judgment (Filing No. 36).


**SO ORDERED** this 4th day of September 2018.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.